# EXHIBIT A

*And Personally*
*Served 9/27*

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
NEW PENN FINANCIAL LLC, dba SHELLPOINT MORTGAGE
SERVICING, a Delaware Limited Liability Company,
Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MOHAMMAD A. REDJAI, and SHANIN REDJAI

| |
|---|
| FOR COURT USE ONLY |
| *(SOLO PARA USO DE LA CORTE)* |
| **ELECTRONICALLY FILED** |
| Superior Court of California, |
| County of Orange |
| **09/26/2016** at 03:53:28 PM |
| Clerk of the Superior Court |
| By Christin Dawson, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
CENTRAL JUSTICE CENTER
700 Civic Center Drive West., SANTA ANA, CA 92701

| CASE NUMBER: |
|---|
| *(Número del Caso):* 30-2016-00877392-CU-OR-CJC |
| Judge Nathan Scott |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
GARY S. SAUNDERS     (Bar # 144385)
SAUNDERS LAW GROUP, P.C.
1891 CALIFORNIA AVE, SUITE 102, CORONA, CA 92881

Phone No.: (951) 272-9114

DATE:
*(Fecha)* 09/26/2016 ALAN CARLSON, Clerk of the Court    Clerk, by _____, Deputy
                                                          *(Secretario)*              *(Adjunto)*
                                                          Christin Dawson

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Law offices of Les Zieve, a California Corporation

   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 9/27/16

| | | |
|---|---|---|
| Form Adopted for Mandatory Use | **SUMMONS** | Page 1 of 1 |
| Judicial Council of California | | Code of Civil Procedure §§ 412.20, 465 |
| SUM-100 [Rev. July 1, 2009] | | www.courtinfo.ca.gov |
| | | *LexisNexis® Automated California Judicial Council Forms* |

| SHORT TITLE:                              |              | SUM-200(A) |
|-------------------------------------------|--------------|------------|
| REDJAI v. NEW PENN FINANCIAL LLC, et al.  | CASE NUMBER: |            |

### INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

LAW OFFICES OF LES ZIEVE, A California Corporation, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-HY10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HY10, and and DOES 1-10, inclusive

Page __2__ of __2__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

*LexisNexis® Automated California Judicial Council Forms*

Gary S. Saunders, Esq. (SBN 144385)
SAUNDERS LAW GROUP, P.C.
1891 California Ave., Ste. 102
Corona, CA 92881.
TELEPHONE NO.: 951) 272-9114     FAX NO.: 951) 270-5250
ATTORNEY FOR (Name): Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, 92701
BRANCH NAME: Central Justice Center

**FOR COURT USE ONLY**

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**09/26/2016** at 03:53:28 PM
Clerk of the Superior Court
By Christin Dawson, Deputy Clerk

CASE NAME:
Redjai v. New Penn Financial, LLC, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 30-2016-00877392-CU-OR-CJC  JUDGE: Judge Nathan Scott  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [✓] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action (specify): Eleven (11)
5. This case [ ] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: September 26, 2016
Gary S. Saunders, Esq.
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

Gary S. Saunders, Esq. (SBN: 144385)
SAUNDERS LAW GROUP, LTD
1891 California Ave., Ste. 102
Corona, CA 92881
Tel. (951) 272-9114
Fax (951) 270-5250

Attorney for Plaintiffs,
MOHAMMAD A. REDJAI AND SHANIN REDJAI

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

09/26/2016 at 03:53:28 PM
Clerk of the Superior Court
By Christin Dawson, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

MOHAMMAD A. REDJAI, AND SHANIN REDJAI, individuals,

    Plaintiffs,

v.

NEW PENN FINANCIAL LLC, dba SHELLPOINT MORTGAGE SERVICING, a Delaware Limited Liability Company; LAW OFFICES OF LES ZIEVE, A California Corporation; THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-HY10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HY10; and DOES 1 - 10, inclusive,

    Defendants.

Judge Nathan Scott

CASE NO: 30-2016-00877392-CU-OR-CJC

COMPLAINT FOR:

1. VIOLATION OF CAL. CIV. CODE § 2923.55;
2. VIOLATION OF CAL. CIV. CODE § 2924.17;
3. VIOLATION OF FDCP;
4. VIOLATION OF DODD-FRANK ACT ("UDAAP");
5. VIOLATION OF *BUSINESS AND PROFESSIONS CODE SECTION 17200*;
6. CANCELATION OF INSTRUMENT;
7. VIOLATION OF U.S.C. 1641;
8. RESCISSION;
9. FRAUD;
10. DECLARATORY RELIEF; AND
11. NEG. INT. EMOTIONAL DISTRESS;

PLAINTIFF DEMANDS A JURY TRIAL

## INTRODUCTION

Plaintiffs, MOHAMMAD A. REDJAI AND SHANIN REDJAI, (hereinafter referred to as "Plaintiffs") brings this lawsuit against NEW PENN FINANCIAL LLC, dba SHELLPOINT

SAUNDERS LAW GROUP, LTD.
1891 California Avenue, Suite 102, Corona, CA 92881 Tel. (951) 272-9114 Fax (951) 270-5250

MORTGAGE SERVICING, a Delaware Limited Liability Company, LAW OFFICES OF LES ZIEVE, A California Corporation, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-HY10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HY10 ("Defendant(s)" or "BONYM"); and DOES 1 - 10, inclusive, for Defendants' unlawful and unfair lending and foreclosure practices.

1.     Plaintiffs seek actual economic and non-economic damages, attorney fees and costs.

## PARTIES

2.     Plaintiffs, MOHAMMAD A. REDJAI AND SHANIN REDJAI ("Plaintiffs") are, and at all relevant times mentioned herein are residents of Orange County, California, the subject property is located at: 181 Sanctuary, Irvine, California 92620, APN # 932-655-22 ("Subject Property"), legally described as:

PARCEL NO. 1:

UNIT 52 (THE "UNIT") as shown and described in the cachette phase 14 Condominium Plan (Together With Any Amendments Thereto, Collectively, The "Plan") for lots 13 and 15 of tract no. 16534, which plan was recorded on November 28, 2005, as instrument No. 2005000946878 in official records of Orange County, California ("Official Records,") Tract No. 16534 As shown on the subdivision Map ("Map") filed on June 29, 2004, In Book 859, at pages 8 to 12, inclusive, of Miscellaneous Maps in the office of the Orange County Recorder. Excepting therefrom:

A. Any and all oil, oil rights, minerals, mineral rights, natural gas rights and other hydrocarbons by whatsoever name known, geothermal steam, and any other material resources and all products derived from any of the foregoing, that may be within or under the unit, together with the perpetual right of drilling, mining, exploring and operating therefor and storing in and removing the same from the unit or any other land, including the right to whipstock or directionally drill and mine from lands other than the unit, oil or gas wells, tunnels and shafts into, through or across the subsurface of the unit, and to bottom of such whipstocked or directionally drilled wells. Tunnels and shafts under and beneath or beyond the exterior limits thereof, and to redrill, retunnel, equip, maintain, repair, deepen and operate any such wells or mines without, however,

2

the right to drill, mine, store, explore or operate through the surface or the upper five hundred (500) feet of the surface of the unit.

B. Any and all water, water rights or interests therein appurtenant or relating to the unit or owned or used by Irvine in connection with or with respect to the unit (no matter how acquired by Irvine,) whether such water, water rights or interest therein shall be riparian, overlying, appropriative, littoral, percolating, prescriptive, adjudicated, statutory or contractual, together with the right and power to explore, drill, redrill, remove and store the same from or in the unit or to divert or otherwise utilize such water, water rights or interest therein on any unit owned or leased by Irvine,; but without, however, any right to enter upon the surface of the unit in the exercise of such rights.

Parcel No. 2:
An undivided one-ninth (1/9) fee simple interest as a tenant in common in and to the common area described in the plan.

Parcel No. 3:
Exclusive easements for the benefit of the unit appurtenant to parcel nos. 1 and 2 described above, for internal and external telephone wiring purposes, as applicable, over those portions of the association property or adjacent unit shown on the plan or as described in the declaration or the notice of addition.

Parcel No. 4:
Non-Exclusive easement for access, drainage, support, encroachment, maintenance, repair, and for other purposes, all as may be shown on the plan and the map, and as described in the master declaration, the notice of annexation, the declaration and the notice of addition.

3. Defendant NEW PENN FINANCIAL LLC, dba SHELLPOINT MORTGAGE SERVICING ("Defendant(s)" or "NEW PENN") is a Delaware limited liability company, with its principle place of business in South Carolina, and at all times mentioned herein, conducted business in Orange County, California. Based upon information and belief, as it pertains to this complaint and as a consequence of its actions has submitted itself to and is within the personam jurisdiction of this court.

4. Defendant LAW OFFICES OF LES ZIEVE ("Defendant(s)" or "LES") is the alleged substituted Trustee under the Deed of Trust. LES has its principal place of business in Irvine, California. LES conducts, and at all times mentioned, conducted business in Orange County,

3

PLAINTIFFS' COMPLAINT

California. Based upon information and belief, as it pertains to this complaint and as a consequence of its actions LES has submitted itself to and is within the personam jurisdiction of this court.

5. Defendant THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-HY10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HY10 ("Defendant(s)" or "BNYM") is a New York corporation, with its principle place of business in New York. BNYM conducts, and at all times mentioned, conducted business in Orange County, California. Based upon information and belief, as it pertains to this complaint and as a consequence of its actions BNYM has submitted itself to and is within the personam jurisdiction of this court.

6. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1-10, inclusive ("DOES"), and therefore sues them by fictitious names. Plaintiffs will amend this complaint to allege DOES's true names and capacities when they are ascertained. Plaintiffs request that when the true names and, capacities of these DOE Defendants are ascertained, they may be inserted in all subsequent proceedings, and that this action may proceed against them under their true names.

7. Plaintiffs are informed and believe and upon this basis allege that DOES claim some right, title, estate, lien, or interest in the subject property, adverse to Plaintiffs' own title. Each of these claims constitutes a cloud on Plaintiffs' title to the subject property from which Plaintiffs seek relief.

8. Plaintiffs are informed and believe and upon this basis allege that DOES are contractually, strictly, negligently, intentionally, or vicariously liable, and/or otherwise legally responsible in some manner for each and every act, omission, obligation, event, or happening set forth in this complaint, and that DOES are indebted to Plaintiffs as hereinafter alleged.

9.     Plaintiffs are informed and believe that any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing, and active concealment of the facts alleged herein. Despite exercising reasonable diligence, Plaintiffs could not have discovered, did not discover, and were prevented from discovering, the wrongdoing complained of herein.

10.    In the alternative, Defendants should be estopped from relying on any statutes of limitations. Defendants have been under a continuing duty to disclose the true character, nature, and quality of their financial services and debt collection practices. Defendants owed Plaintiffs an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.

11.    Defendants should also be estopped from relying on the tender rule. An offer to pay the debt is not required as to claims to set side foreclosure sales, where it would be inequitable, such as where plaintiffs do not owe the debt, or have a legal right to avoid the sale (*Humbolt Sav. Bank v. McCleverly* (1911) 161Cal.285, 291; *Carruth v. Fritch* 36 Cal.2d 426 (1950), 430-431 at 433)). Even after the sale, a void, fraudulent or mistaken foreclosure process, sale or trustee's deed can be set aside [or further enjoined].

## JURISDICTION AND VENUE

12.    The subject property of this controversy is located in Orange County, California.

13.    The wrongful acts alleged herein occurred in Orange County, California.

14.    The court has jurisdiction over the parties pursuant to *California Constitution* Article VI, section 10, which grants this Court *"original jurisdiction in all causes except those given by statute to other trial courts"*.

15.    Plaintiffs are residents of Orange County, California.

16.    Defendants, NEW PENN, LES and BYNM regularly engage in business in the State of California. LES and NEW PENN regularly engage in collection activity in the State of California.

17.    Plaintiffs brought this action against Defendants for damages and harm resulting from Defendants' negligent, unlawful conduct and violation of statutes concerning a residential mortgage loan transaction with the Plaintiffs and foreclosure of their property. The residential mortgage concerned the property located at **181 Sanctuary, Irvine, California 92620.**

18.    Venue is proper in the State Court of California

## GENERAL AND FACTUAL ALLEGATIONS

19.    On February 24, 2006, a Deed of Trust ("DOT") was recorded in the Official Records of Orange County regarding the property located at 181 Sanctuary, Irvine, California 92620. The names of the parties were Mohammad A Redjai; Shahin A Redjai; Pulte Mortgage, LLC; and TJ Blinstrubas as trustee. The stated amount of the Note was $716,085.00. The Note is an adjustable rate rider. (**Exhibit "A"**)

20.    On or around 2011, 5 years after the pooling trust closed and stopped accepting assignments, Bank of America ("BANA") caused an Assignment of Deed of Trust to be recorded in the Orange County Recorder's Office through which Mortgage Electronic Registration Systems, Inc. purportedly assigned all beneficial interest in the DOT, together with the Note and obligations therein described and the money due and to become due thereon with interest, to BNYM as Trustee for the certificateholders of the CWALT, Inc., Alternative Loan Trust 2006-HY10 Mortgage Pass-Through Certificates, Series 2006-HY10 ("Loan Trust"). (**Exhibit "B"**)

21.    Plaintiffs are informed and allege that the "Assignment of the Deed of Trust" giving BNYM the authority to file a Notice of Default and Notice of Trustee Sale on behalf of the certificate holders of the alleged Loan Trust was non-existent after September 2009. The alleged certificates of the Loan Trust were terminated and closed on or about September 2009 at the onset of the enactment of the Emergency Economic Stability Act by the 110 congress.

22.     Unaware of the predatory loan that they had entered into, Plaintiffs complied fully with the Deed of Trust and made mortgage payments for several years. However, Plaintiffs could not figure out how the mortgage payments were being applied and why the loan balance was not going down despite payments for several years. Monthly mortgage payment amounts kept going up too. Plaintiff reached out to BANA to request an accounting. BANA represented that Plaintiff qualified for a loan modification review and instructed Plaintiffs to default on the payment first to get into the review. In reliance, Plaintiffs STOPPED making payments, as instructed by BANA, on the loan to be qualified for assistance. Instead of providing the loan modification review, let alone a modification, Defendant just proceeded to initiate a foreclosure process.

23.     On or about late 2011, Plaintiffs went to four different BANA locations to pay the amounts in arrears in order to bring their alleged loan current. Plaintiffs were told by BANA employees and managers that there was no mortgage account in their name with their alleged loan number. Plaintiffs were turned away and told that there is no account in four different BANA locations. Plaintiffs were also told by BANA employees that if they made a payment the payment will be placed in a suspense account and not credited to their alleged mortgage. This was further proof that Bank of America N.A. was not and has never been the beneficiary or the servicer of the Plaintiffs loan at anytime.

24.     On October 25, 2011, a Substitution of Trustee was recorded in the Official Records of Orange County. BANA signed the Substitution of Trustee, as attorney-in-fact for BNYM, as Trustee for the Loan Trust, and assigned Recontrust Company, N.A. ("Recontrust") as the alleged substituted trustee.

25.     On October 25, 2011, a Notice of Default was recorded in the Official Records of Orange County.

26.     On February 1, 2012, a Notice of Trustee's Sale was recorded in the Official Records of Orange County. The sale date was to be November 15, 2012. This sale was canceled due to promises made between Plaintiffs and BANA.

27.     Between the time that Plaintiffs were instructed to STOP paying (2011) and the time the Defendant, NEW PENN, had become the collector (2014), Plaintiffs had filed 2 separate complaints with the District Court. The first complaint was filed on or about (2012) against the collector at the time BANA, which was eventually dismissed without prejudice by the Plaintiffs based on promises given by BANA. This process was started on or about December 2012, and subsequently BANA failed to perform on their promise. During this time, Resurgent Mortgage Servicing took BANA's place in regards to the loan.

28.     On or about September 2014, Defendant, New Penn accepted the responsibility of collecting the alleged debts that the previous servicer Bank of America N.A. had fraudulently inflated and had denied the Plaintiffs for loan modifications that they were eligible for. At this time, Plaintiffs loan regarding the Subject Property was in default.

29.     On December 4, 2014, Defendant New Penn caused to be recorded in the Official Records of Orange County Recorder's Office a Notice of Default ("NOD"). The Civil Code § 2923.55 declaration stated that Plaintiffs did not meet the definitions of a "borrower" under Civil Code § 2920.5(c). Said Declaration is false because Plaintiffs do meet the definition of a "borrower" under Civil Code 2920.5(c).

30.     Plaintiffs are natural person who are mortgagors. Plaintiffs have in no way surrendered the secured property. Plaintiffs have no intentions to leave their home. Plaintiffs have not participated in any activity to extend the foreclosure process. Plaintiffs contentions is that they were told to become delinquent on their loan in order to receive a loan modification. After approximately

four months of not making a payment, as instructed by BANA, to receive a loan modification, Plaintiffs attempted to reinstate their loan at four different BANA locations. Plaintiffs were prevented by BANA to reinstate their loan. Plaintiffs intentions the whole time has been to get justice for being forced into this situation and not to extend the foreclosure process. Plaintiffs have not filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code.

31.     On or about December 2014, Plaintiffs sent a Notice of Dispute and Debt Validation to the Defendant, New Penn, in order to see accounting of the alleged debt and documentation that would explain the inflated amounts shown on the "NOD" as being delinquent. Plaintiffs never received an answer from the so called servicer.

32.     On April 27, 2015, another Notice of Trustee's Sale was recorded in the Official Records of Orange County. The sale date was to be May 26, 2015. Plaintiffs allege that New Penn was a debt collector. A copy of a letter sent from Shellpoint Mortgage Servicing to Plaintiffs attorney identify itself as a "professional debt collector" is attached and labeled **Exhibit C**. As a result, it was not allowed to conduct a non-judicial foreclosure in an attempt to dispossess the Plaintiff's property.

33.     In May 2015, Plaintiffs filed a complaint with the District Court that named Defendants BANA, New Penn, and BYNM. In June 2015, Plaintiffs dropped New Penn and BYNM from the lawsuit in exchange that the foreclosure process would be stopped while the litigation with BANA was ongoing.

34.     In November 2015, Plaintiffs and BANA entered into a settlement and the case was dismissed.

35.     In April 2016, Plaintiffs received an invoice statement from New Penn that stated an alleged debt (an amount that had already been disputed with BANA) and additional amounts that were being added to the alleged debt which exceed the California "Usury laws". The amount of debt stated

was $417,067.21 with an additional amount being added in the amount of $9,874.23 per month. The monthly amount due under the loan was increased approximately by 300 percent. The invoice does not provide any explanation as to why there was such a substantial increase in monthly payments.

36.    Plaintiffs allege that Defendant, New Penn, is showing amounts per a contract that the Plaintiffs have never been a party to as stated within the invoice. Plaintiffs have never agreed to any contracts with the New Penn or the predecessors BANA.

37.    Plaintiffs upon receiving the above stated invoice promptly communicated with the purported servicer, New Penn, through a Notice of Dispute and Validation of Debt which was received by New Penn on or about May 2016. NEW PENN has failed to provide the Plaintiffs with the required disclosures for validation of the alleged debt five (5) days from the receipt of the initial invoice and additionally failed to respond to the Plaintiffs request for validation of the alleged debt and proof of accounting of the alleged debt. New Penn failed, again, to respond to Plaintiffs debt validation and accounting requests. Instead New Penn continued with its foreclosure activity on the Subject Property.

38.    In June 2016, Plaintiffs received another invoice from New Penn with another inflated monthly payment being added to the amount in arrears. Plaintiffs, again, sent a Notice of Dispute and Validation of Debt to collector New Penn. Plaintiffs did not receive any response from New Penn as to the validity of the debt and accounting of it.

39.    In July and August 2016, Plaintiffs continued to receive additional invoices from New Penn with inflated monthly payments being added to the amount in arrears. The monthly payment amount was now in excess of $10,000.00. The invoice also stated that the collector was adding the amounts due to a contract as of November 2010. Plaintiff now disputes the existence of any contract that would enable the charging of such fees. A copy of said invoice for the month of August 2016 is attached and labeled **Exhibit "D"**.

40.     On August 30, 2016, LES sent, by mail, to Plaintiffs a Substitution of Trustee and Notice of Trustee Sale. Said Substitution of Trustee was executed on July 28, 2016. New Penn's alleged foreclosure specialist, Suzette Fontenette, signed the Substitution of Trustee. Said Substitution named LES as the trustee. (**Exhibit "E"**) The Notice of Trustee Sale ("NOTS") that was sent concurrently with the Substitution of Trustee, has a pending foreclosure sale date on September 30, 2016, at 3:00 p.m (**Exhibit "F"**).

41.     On or about August 20, 2016, due to New Penn's continued reckless, abusive, deceitful, fraudulent and abusive conduct and their assertion of an alleged contract and the lack of existence of any disclosure as to the terms of the fabricated contract, the Plaintiffs sent, by registered mail, New Penn a rescission of the alleged agreement. Said rescission is based on TILA and stated that the Plaintiffs were rescinding any and all contracts that the defendant had fabricated or possessed due to lack of any disclosures that would show the dollar amounts due, interest rate charges, and annual percentage rate charges that were disclosed. Plaintiffs received the rescission letter from Plaintiffs on or around August 30, 2016.

42.     Plaintiffs allege that upon receiving Plaintiffs' rescission letter, New Penn moved for filing of a Notice of Trustee Sale for the Subject Property in order to expedite the disposition of the property to avoid any argument for the validation of their fabricated and fraudulent contract that was adding over $10,000.00 per month to the alleged debt in order to "cream[1] the alleged debt" for unjust enrichment. The amounts added to the alleged debt translate to an annual percentage rate of over 30%.

43.     Plaintiffs do not claim that there is no debt. However, Plaintiffs do dispute the amounts shown as delinquent to be wrong and excessively inflated and the rescission of the contract is to bring

---

[1] Creaming the debt refers to the extra charges and fees that are added to the alleged debts so the servicers can collect the said amounts up front before the certificate holders are paid off.

all matters to the original state of the alleged debts which have been fraudulently inflated in order for the defendants to be unjustly enriched through their unlawful, abusive, and illegal acts.

44.     "Foreclosure in California—A Crisis of Compliance" is an audit report commissioned by the City and County of San Francisco (Feb. 2012) to determine the mortgage industry's compliance with applicable laws, and has national significance with respect to the foreclosure crisis showed that because California laws do not require a judge to oversee foreclosures, the conduct of banks in the process is rarely scrutinized. The report by Aequitas Compliance Solutions, a mortgage regulatory compliance firm, uncovered legal violations in foreclosure sales from January 2009 to November 2011. Over three-quarters of the files contained what appear to be clear violations of law, including in 85 percent documents recording the transfer of a defaulted property to a new trustee were not filed properly or on time and in 45 percent of the foreclosures, properties were sold at auction to entities improperly claimed to be the beneficiary of the deeds of trust. This study shows that homeowners are systematically being deprived of legal safeguards and due process rights.

45.     Plaintiffs have suffered damages to their credit scores by reduced mortgage payments and numerous loan modification reviews (with additional interest and late payments) due to the actions of Defendants. Defendants' initiation of the foreclosure proceeding constitute a lost property interest to Plaintiffs. Due to Defendants' wrongful actions, Plaintiffs' home is threatened by a sale at public auction.

## FIRST CAUSE OF ACTION
### Violations of Cal Civil Code § 2923.55
### (Against New Penn and BNYM)

46.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

12

47.     On or about December 4, 2014, Defendant NEW PENN caused to be recorded in the Official Records of Orange County Recorder's Office a Notice of Default ("NOD"). The "boiler-plate" Declaration attached to the NOD that comports to comply with the provisions of Cal. Civ. Code § 2923.55 is false in that it states that "The mortgage servicer was not required to comply with California Civil Code § 2923.55 because the individual does not meet the definition of a "borrower" under Civil Code § 2920.5(c)." Plaintiffs allege that they meet the definition of a "borrower" under Civil Code § 2920.5(c).

48.     Plaintiffs are natural person who are mortgagors. Plaintiffs have in no way surrendered the secured property. Plaintiffs have no intentions to leave their home. Plaintiffs have not participated in any activity to extend the foreclosure process. Plaintiffs contentions is that they were told to become delinquent on their loan in order to receive a loan modification. After approximately four months of not making a payment, as instructed by BANA, to receive a loan modification, Plaintiffs attempted to reinstate their loan at four different BANA locations. Plaintiffs were prevented by BANA to reinstate their loan. Plaintiffs intentions the whole time has been to get justice for being forced into this situation and not to extend the foreclosure process. Plaintiffs have not filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code.

49.     On or about April 30, 2014, Defendants caused to be recorded in the Kern County Recorder's Office a Notice of Trustee's Sale based upon the void NOD. The Notice of Trustee's Sale ("NOTS) originally set the sale date of the Subject Property for May 23, 2014. As the NOD is a void instrument and the NOTS is based on the NOD the NOTS is also void.

50.     Defendants owed Plaintiffs a duty under Cal. Civ. Code § 2923.55 to contact Plaintiffs in order to assess their financial situation and explore options to avoid foreclosure; to advise Plaintiff of his right to request a meeting with Defendant within 14 days; and to provide Plaintiff the toll-free

13

PLAINTIFFS' COMPLAINT

telephone number made available by the Department of Housing and Urban Development ("HUD") for housing counseling.

51.    Defendants violated their duty under § 2923.55 by doing none of it and claiming, falsely, that Defendants did not meet the definition of a "borrower."

52.    Furthermore, the purpose of Cal. Civ. Code § 2923.55 is to provide meaningful review of whether a borrower is eligible for assistance. However, when Defendants discovered that Plaintiff was eligible for relief, they implemented their scheme of delay and foreclosure. Again, the court must look at the legislative intent and purpose of this code and conclude that not contacting Plaintiff to explore and discuss foreclosure alternatives is insufficient to comply with the requirements of the Cal. Civ. Code § 2923.55.

53.    As aforementioned, Defendants have purposefully delayed communication, failed to reinstate the loan, conducted the review process to progress over an unnecessarily long duration, and inflated the monthly payment due on the loan by over 300 percent. Such conduct was purposefully implemented to ultimately make any actual assistance when provided to be meaningless. This tactic was not only profitable at Plaintiffs' expense, but increased the risk of an incurable default; the very purpose Cal. Civ. Code § 2923.55 was enacted to prevent.

## SECOND CAUSE OF ACTION

### Violation of Ca. Civ. Code § 2924.17 – Accurate Declarations

### (Against all Defendants)

54.    Plaintiff re-alleges and incorporates herein by reference the allegations made in paragraphs above inclusive, as though fully set forth herein.

55.    Ca. Civ. Code § 2924.17(a) and (b) provides "A declaration recorded pursuant to Section 2923.5 or until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of

sale, assignment of deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence." "Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status.

56.     As alleged herein, Defendants caused to be recorded a NOD and NOTS that are not accurate and complete.

57.     Plaintiffs have disputed the amount in default numerous times. Defendants have failed to provide a response to any of Plaintiffs disputes of the default. Defendants have continued to inflate the default amount. Since April 2016, Defendants have inflated the monthly mortgage payments by 300 percent.

58.     As a result, the NOD and NOTS that are recorded are not based on reliable and competent evidence and is not accurate and complete.

59.     Plaintiff therefore demands civil penalties against Defendants and damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### Violations of FDCPA 15 U.S.C§§ 1692-1692p
### (Against New Penn, LES, and DOES 1-10)

60.     Plaintiff re-alleges and incorporates herein by reference the allegations made in paragraphs above inclusive, as though fully set forth herein.

61.     New Penn and LES failed to communicate to Plaintiffs the required "Validation of Debt" notices within 5 days of receipt of the first invoice issued to Plaintiffs. New Penn and LES as

collectors were required to inform Plaintiffs about their rights in connection with validation of debts under "Required Notices and Conduct" pursuant to [15 USC §1692 g §809].

62.    New Penn failed to respond to Plaintiffs request for "Notice of Dispute and Validation of Debt" from May 2016. New Penn, also, failed to respond to Plaintiffs request for "Notice of Dispute and Validation of Debt" from June 2016. In fact, defendant NEW PENN refused to sign for the Validation of Debt requests that were sent by Plaintiffs in order to avoid the required response. As a result, New Penn violated 15 USC §1692 g §809.b and 15 USC §1692 e§807.11 for false and misleading representations.

63.    New Penn violated FDCPA 15U.S.C §1692e and §807.14 by using a business, company, or organization name other than the true name of the debt collector's business, company, or organization.  Defendant has attempted to disguise his collection activities by using a dba "Shellpoint Mortgage Servicing" instead of New Penn Financial, LLC. Shellpoint Mortgage Servicing primary business is not even servicing but rather collection of debts.

64.    LES violated FDCPA 15 U.S.C §1692e and §807.14 by using a business, company, or organization name other than the true name of the debt collector's business, company, or organization. LES has attempted to disguise their collection activities by using "The Law offices of Les Zieve" which its primary business is not to practice "LAW" but collections. LES has fabricated and filed robo signed documents on Plaintiffs property title that are intended for the illegal disposition of Plaintiffs' real property in lieu of alleged debts that Defendant LES refuses to validate.

65.    New Penn and LES are in violation of FDCPA 15U.S.C §1692e and §807.2(A) for their false and misleading representations of the character, amount, or legal status of the alleged debt. New Penn and LES have refused to provide any accounting or verification of the amounts they are claiming

as being due and delinquent as stated in their invoices sent to Plaintiffs in 2016. Plaintiffs reasserts that the amounts shown in the invoices are NOT CORRECT.

66.     New Penn violated FDCPA 15 U.S.C §1692(f)(1) by including in its loan statements amounts that were added to alleged debt amount that were not authorized by law or a contract. The inflated amounts stated in the invoices sent to the Plaintiffs in 2016 have no foundation and been fabricated for the benefit of the collectors to "*cream the debt*" and to be unjustly enriched.

67.     New Penn and LES have filed a Notice of Trustee Sale that is not in compliance with the law. Defendants are third party collectors and any amounts that are being alleged as delinquent are not secured by a security instrument and defendants do not have the present right of possession without obtaining a judgment in a court of law for the legal disposition of real property.  Defendants have violated FDCPA 15U.S.C §1692(f) and §808.6(a)(b).

68.     15 U.S.C. § 1692g(b) states the following:

*Disputed Debts: If the consumer notifies the debt collector in writing within the thirty day period described in 15 USC § 1692g(a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector may not continue attempting to collect the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of the judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."*

New Penn and LES are in violation of 15 U.S.C §1692g(b) for continuing their debt collection efforts after the Plaintiffs had disputed the debt and had requested items that were required for validation of the alleged debt which have never been provided by the Defendants.

69.     New Penn and LES have violated the FDCPA by their False and misleading representations [15 U.S.C § 1692e, unfair practices 15 U.S.C §1692f, harassment and abuse 15 U.S.C § 1692d] by failing to provide the requested items for the validation of the accounting of the alleged delinquent debt stated in the "NOTS", and for failing to validate the alleged debt and to provide proof of judgment giving them the right to proceed with the disposition of the real property. Defendants New Penn and LES have deceived and committed fraud on to the Plaintiffs in order to be and unjustly enriched through the illegal disposition of the Subject Property.

## FOURTH CAUSE OF ACTION
### Violations of "UDAAP" Dodd-Frank
### (Against New Penn, LES, and DOES 1-10)

70.     The Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

71.     It has been the intent of Congress to make sure that all transactions related to the origination and extension of consumer credits and to avoid any Unfair, deceptive, or abusive acts and practices (UDAAPs) that can cause significant financial injury to consumers, erode consumer confidence, and undermine the financial marketplace. Under the Dodd-Frank Act, it is unlawful for any provider of consumer financial products or services or a service provider to engage in any unfair, deceptive or abusive act or practice.

72.     New Penn is a consumer financial company that provides financial products (Mortgages) as their primary line of business. Shellpoint Mortgage Servicing is a dba of New Penn.

73.     New Penn has violated the provisions of (UDAAP) by using a name other than the true name of the company that is attempting to collect the debt in order to become unjustly enriched through their unfair, deceptive, or abusive acts.

## FIFTH CAUSE OF ACTION

18

## Violation of *Business and Professions Code Section 17200*
### (Against all Defendants)

74. Plaintiffs hereby re-allege and incorporate by reference the foregoing paragraphs as if set forth fully herein.

75. The California Unfair Competition Law, *Cal. Bus. & Prof. Code § 17200 et seq.* ("UCL"), defines unfair competition to include any "unlawful," "unfair," or "deceptive" business act or practice. *Cal. Bus. & Prof. Code § 17200*. The UCL authorizes this Court to issue whatever orders or judgments may be necessary to prevent unfair or unlawful practices, or to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Id. *§ 17203*.

76. Specifically, as fully set forth above, Defendants engaged in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential properties and related matters by, among other things,

(a) Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

(b) Executing and recording false and misleading documents;

(c) Executing and recording documents without the legal authority to do so;

(d) Failing to disclose the principal for which documents were being executed and recorded in violation of *California Civil Code Section 1095*;

(e) Acting as beneficiaries and trustee without the legal authority;

(f) Defendants violated *CC § 2924(a)(6)* – only the beneficial interest holder, a designated agent of the beneficiary, or the original trustee or substituted trustee can file the NOD;

77. Defendants violated *Cal. Bus. and Prof. Code §17200, et seq.* Defendants engaged in a uniform pattern and practice of overly aggressive servicing which resulted in premature default, and

19

unfair, unlawful and fraudulent foreclosure proceedings, along with the assessment of unwarranted fees associated with default and foreclosure.

78. Some of these acts and practices include, but not limited to, violating Civil Codes, making misrepresentations and false statements with regards to status, intent, and process. Substantial increasing Plaintiffs monthly payments. Recording declarations that were blatantly false. Defendants failure to collect on the debt as collectors. Defendants also extracted payments and prevented Plaintiffs from saving their house from other options, such as a sale. And it is unfair to prolong the process negligently or intentionally to rack up fees and cause higher arrears to make it difficult for Plaintiff to receive affordable modification at incurred costs.

79. The harm to Plaintiffs and to members of the general public outweighs the utility of Defendant's policy and practices. The Defendant's unfair, unlawful, and fraudulent business practices and false and misleading advertising present a continuing threat to members of public in that other consumers will be defrauded into having their property improperly sold at foreclosure. Plaintiff and the general public have no other adequate remedy of law. Plaintiff is therefore entitled to attorney's fees as available under *Code Sec. 17200* and related sections.

80. This fraudulent conduct is likely to deceive members of the public generally and indeed has, as Defendants have been able to place many borrowers in predatory loans, promissory fraud, misrepresentation, dual-tracking, and then foreclose on their homes. Defendants' unfair business practices are substantial. These practices are robbing borrowers of their home and credit.

81. Plaintiffs demand Defendants be enjoined from continuing with their unfair, unlawful, and fraudulent activities as alleged and that they be given all monetary awards statutorily due them.

82. As a proximate result of Defendants' repeated violations of the Civil Code and FDCPA, Plaintiffs have suffered, and will continue to suffer damages to their credit scores and an

increase in the principal amount on the loan due to the actions of Defendants. The initiation of the foreclosure proceeding by Defendants constitutes a lost property interest on behalf of Plaintiff. Plaintiff seeks general and special damages in an amount according to proof at trial, but not less than $1,000,000.

## SIXTH CAUSE OF ACTION
### Cancelation of Instrument
### (Against All Defendants)

83.     Plaintiff alleges and incorporates by reference in all preceding paragraphs as though fully set forth herein.

84.     A court may cancel a written instrument if it creates a reasonable apprehension that, if left outstanding, may cause serious injury to a person against whom it is void or voidable. (*Civ. Code § 3412.*)

85.     Defendants conducted foreclosure proceedings in violation of Homeowner's Bill of Rights. Plaintiff seeks to cancel and enjoin the sale as NOD and NOTS. Defendants had a duty to conduct proper notices and documents without violating civil codes and statutory requirements, but Defendants failed to do so.

86.     If the wrongfully recorded Notice of Default and, Notice of Trustee's instruments are left outstanding, Plaintiff will continue to suffer loss and damages. Plaintiff therefore seeks cancellation of the following recorded instruments, a) the Notice of Default and; b) the Notice of Trustee's Sale.

87.     Plaintiff is informed and believes, and therefore alleges, that Defendants acted willfully and with a conscious disregard for Plaintiff' rights and with a specific intent to defraud and injure Plaintiff, by causing the Notice of Default and Notices of Trustee's Sale instruments to be prepared and recorded without a factual or legal basis for doing so.

88.     Defendants through the actions alleged above, have wrongfully commenced foreclosure under the Note and Deed of Trust on the subject property via a foreclosure action. Said unlawful foreclosure action has caused and continues to cause Plaintiff great and irreparable injury as said property is unique.

89.     Upon information and belief, these acts by Defendants constitute fraud, oppression and malice under *Cal. Civil Code §3294*. Defendants acted with a conscious disregard for the requirements to conduct a non-judicial foreclosure sale under civil code §2924 et sec. knowing they had taken a calculated risk that Plaintiff would not contest.

90.     By virtue of Defendants' willful and wrongful conduct as herein alleged above, Plaintiff is entitled to general and special damages according to proof at trial, but not less than $1,000,000, as well as punitive and exemplary damages as determined by this Court.

## SEVENTH CAUSE OF ACTION
### Violations of 15 U.S.C. § 1641
### (Against All Defendants)

91.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

92.     It has been the intent of Congress to make sure that all transactions related to the origination and extension of consumer credits to be in compliance with full disclosure of the facts related to the transaction.

93.     New Penn and LES have failed to make the correct and proper disclosures as set forth in this title under the required timelines.

94.     New Penn entered the picture of this transaction around September 2014 at which time they were required to make the appropriate disclosures as to the role of the alleged Servicer, Assignee, or the owner of the alleged debt.

95.     The Servicer and the Assignee of the debt cannot be the same party pursuant to this title. In fact, New Penn and LES are considered as [*collectors*] by law.

96.     New Penn and LES have failed to file the proper disclosures under 15 U.S.C. § 1641(g).

97.     New Penn and LES lack of disclosure was due to their lack of standing as a true assignee of the alleged debt; as such the defendant lacks the authority or the legal right to ask for the Plaintiffs' payments.  In light of the Defendants constant role switching and misrepresentation, New Penn and LES are designated financial agents [*collectors*] hired to collect on behalf of parties unknown; New Penn and LES owe a duty of care under 15 U.S.C § 1641 to properly disclose their standing and role to the Plaintiffs in order for the Plaintiffs to properly identify the parties that are owed.  The intent for the disclosure laws are for the parties to operate in an environment of fairness and equitability for all parties.  The actions of the defendants cause chaos, confusion, anxiety, and litigation. The actions of the Defendants are conducted in such a manner as to bring unjust enrichment and profits through acts of fraud and deceit.

98.     The Defendants actions from the first contact to the filing of this complaint have been done under a veil of mystery which has been designed to hide the facts and to deceive the Plaintiffs. The actions of the defendants are unlawful as they are bound by duties set forth to conduct themselves according to the law.  In this case it means that the        collectors can only declare the alleged debt delinquent through a judicial action and a judgment from the court.

### EIGHTH CAUSE OF ACTION
#### Rescission
#### (Against New Penn)

99.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

23

PLAINTIFFS' COMPLAINT

100. New Penn and LES have no secured or right of possession to the Subject Property as they failed to file a judicial action within the allowed time to assert their secured interest in the real property located at 181 Sanctuary, Irvine, California 92620.

101. On or about August 20, 2016, Plaintiffs sent, by registered mail, New Penn a rescission of the alleged agreement. Said rescission is based on TILA and stated that the Plaintiffs were rescinding any and all contracts that the defendant had fabricated or possessed due to lack of any disclosures that would show the dollar amounts due, interest rate charges, and annual percentage rate charges that were disclosed.

102. To date, New Penn has failed to respond in any way to Plaintiffs rescission letter.

103. New Penn was required to provide disclosure statements to Plaintiffs when started alleging servicing the loan on the Subject Property. By not providing the disclosure statements to Plaintiffs, Plaintiffs gained the ability to rescind any and all contracts between New Penn and Plaintiffs.

104. New Penn has filed a notice of trustee sale based on alleged delinquent payments that have not been validated. In addition, New Penn has submitted invoices to the Plaintiffs that showed an alleged contract that was established between Plaintiffs and New Penn.

105. REDJAI asserts that Plaintiffs requested the validation of the debt and accounting from New Penn on several occasions and instead of receiving items that would validate the alleged debts received invoices that had inflated and overstated amounts being added to the alleged debt.

## NINTH CAUSE OF ACTION
### FRAUD
### (Against New Penn)

106. Plaintiff incorporates herein by reference the allegations made in paragraphs above as though fully set forth herein.

107.   The Elements of Fraud are: (1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages.

108.   Defendant made false statements. Defendant has sent to Plaintiff monthly invoices regarding the loan on the property. Defendant has continued to increase the amount owed regarding the loan. Defendant has caused a NOD and NOTS to be recorded against the Subject Property. Defendant have acted as if it has authority to foreclose on the Subject Property. Defendant has substantially increased the monthly statement (approximately 300 percent).

109.   Defendant is not the servicer of the above mentioned loan. Defendant is a debt collector. Defendant received this debt when Plaintiffs were already in default on the loan. Defendant states on written communications and on its telephone that it is a debt collector. Defendant wants to comply with some laws for a debt collector but not all of them. Defendant is a debt collector and needs to comply with all the debt collecting laws. Defendant is not a creditor as it wants Plaintiff to believe. Defendant does not have the ability to change the terms of the promissory note and increase the monthly statement by approximately 300 percent.

110.   Defendant is aware that it is a debt collector. Defendant knew that it purchased the debt when it was in default. Defendant states that it is a debt collector on its telephone and in its written communications. Defendant is aware of the promissory note and the terms within it.

111.   Defendant wants Plaintiffs to rely on the fact that it is a servicer. If Plaintiff believes that Defendant is a servicer of the loan and not a debt collector it will have more freedom. Defendant can continue to increase the debt on a monthly basis. Defendant can use non-judicial foreclosure instead of judicial foreclosure. A reasonable person that receives a monthly statement with a substantial increase from a business named "Mortgage Servicing" would reasonable believe for the increase to be valid.

112.   Due to Defendants' actions Plaintiff has been damaged Plaintiff with lowered credit scores, added foreclosure costs, credit damage, and costs of court fees and representation to right this wrong. Defendants' initiation of foreclosure proceedings constitute lost property interest to Plaintiff. Plaintiffs default amount has increased substantially making it harder for Plaintiffs to reinstate the loan, sale the property, or loan modification.

### TENTH CAUSE OF ACTION
### DECLARATORY RELIEF
### (Against All Defendants)

113.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

114.   Plaintiffs assert that the only amount due is the amounts shown on the deed of trust. Defendants' fraudulent inflated statements and lack of debt validation is evidence of defendants lacking standing in amounts shown as delinquent in the notice of default and notice of trustee sale.

115.   New Penn and LES have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignments have no value since the Deed of Trust is wholly unsecured.

116.   On or about February 24, 2006, New Penn and LES claim they had secured enforceable interest in, and perfected lien against, the Plaintiffs' Note and deed of Trust or Property. This claim is not possible as New Penn and LES are *"debt collectors"*.

117.   New Penn and LES have no secured and enforceable interest in Deed of Trust of the Subject Property.

118.   Thus, the competing allegations made by Plaintiffs, above, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.

119.   Accordingly, Plaintiffs requests that the Court make a finding and issues appropriate orders stating that none of the named Defendants, have any right or interest in plaintiffs' Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect Plaintiffs' mortgage payments or enforce the terms of the alleged Note or Deed of Trust in any manner whatsoever.

120.   Plaintiffs will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) plaintiff will be denied the opportunity to identify their true and current creditor/lender and to negotiate with them;  (2) They will be denied the right to conduct discovery and have New Penn and LES and other defendants' claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; and (3) they will be denied the opportunity to discover the true amount they still owe minus any legal costs, fees and charges.

121.   Due to the actual case and controversy regarding competing claims and the allegations, it is necessary that the court declare the actual rights and obligations of the parties and make a determination as to whether New Penn and LES claims against Plaintiffs are enforceable and whether it is secured or unsecured by any right, title, or interest in Plaintiffs' real property.

## ELEVENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (Against New Penn)

122.   Plaintiffs hereby re-allege and incorporate by reference the foregoing paragraphs as if set forth fully herein.

123.   Plaintiffs have suffered serious emotional distress as a result of Defendant's repeated violations of California Civil Code in attempting to foreclose on the Subject Property. To establish this claim, Plaintiffs must prove all of the following: 1. That New Penn negligently caused injury to Plaintiffs; 2. That Plaintiffs suffered serious emotional distress; and 4. That New Penn's conduct was a

1   substantial factor in causing Plaintiffs' serious emotional distress.

2       124.   Here, the first element is met. New Penn negligently caused injury to Plaintiffs.

3   Plaintiffs never intended to be in default on their loan. They were instructed to be in default to receive

4   a loan modification. Plaintiffs had always paid their bills on time. After months of not making a

5   payment and still being reviewed for a loan modification, Plaintiffs attempted to reinstate their loan.

6   Plaintiffs were prevented from reinstating their loan. Plaintiffs default continued to increase and more

7   fees were added to the default. New Penn took over, alleging, servicing the loan and continued these

8   same tactics. Instead of working with Plaintiffs, New Penn filed a notice of default and, wrongfully,

9   claimed that Plaintiffs were not "borrowers." In addition, New Penn inflated the monthly payment to

10  300 percent in early 2016. This caused the default amount to increase substantially. By not attempting

11  to use foreclosure alternatives with Plaintiffs, as required, New Penn proceeded with the foreclosure. It

12  recorded a NOD and NOTS. Every day that past and New Penn failed to use other foreclosure

13  alternatives, the stress on Plaintiffs began to build. Plaintiffs were extremely stressed from the fear of

14  losing their home. A fear that they could do nothing about. Plaintiffs were put in this position by

15  BANA and New Penn. New Penn did not even have authority to conduct a non-judicial foreclosure as

16  it is a collector. New Penn's collector status is apparent when you call its dba Shellpoint Mortgage

17  Servicing. Thus, New Penn's decision not attempt to work out foreclosure alternatives with Plaintiffs,

18  as required, and attempting to foreclose on a property that it has no authority to record NODs and

19  NOTS led to Plaintiffs to have extreme stress and fear from of losing their home.

20      125.   The second element is also met. Plaintiffs have had trouble sleeping and eating.

21  Plaintiffs also have trouble maintaining relationships with others. The unnecessary stress that New

22  Penn is causing to Plaintiffs is making their body shut down. It made it extremely hard for Plaintiffs to

23  function. Plaintiffs are unable to cope with the stress. Plaintiffs are elderly and as a result the extreme

1    stress substantially affects them.

2       126. Finally, the third element is met. New Penn was a substantial factor in causing the

3    severe emotional distress that Plaintiffs suffered from. Plaintiffs were forced into this position by

4

5    BANA and New Penn. Plaintiffs have attempted to reinstate the loan but was told numerous times that

6    it could not reinstate the loan. New Penn has done nothing but substantially increased the amount of

7    default. This substantial increase is not within the terms of any promissory note that Plaintiffs entered

8    into regarding the Subject Property. Further, since New Penn does not have authority to record NODs

9

10    and NOTS on the Subject Property. Furthermore, New Penn has went out of its way to assist Plaintiffs

11    with foreclosure alternatives, as it is required to do. As a result, New Penn's actions were a substantial

12    factor in causing Plaintiffs severe emotional distress.

13                            **PRAYER FOR RELIEF**

14       Wherefore, Plaintiffs demands judgment against Defendants as follows:

15

16       1.    For an order rescinding the Notice of Default, Notice of Trustee's Sale recorded

17    against Plaintiffs and the Subject Property;

18       2.    For an order holding Defendants liable for their wrongful foreclosure practices and

19    other violations, awarding Plaintiff compensation for all damages sustained in an amount to be proven

20    at trial, including an award for past and future economic and compensatory damages, past and future

21

22    non-economic, punitive and/or exemplary damages, and other damages;

23       3.    For declaratory relief;

24       4.    For damages awarded to the Plaintiffs in an amount that will be determined at trial;

25       5.    For civil penalties awarded to the Plaintiffs;

26       6.    $5,000 for each wrongful reporting under FDCPA;

27

28

7.    For interest to be calculated at the maximum amount allowable by law, including pre- and post-judgment interest for damages;

8.    For reasonable attorney's fees;

9.    For reasonable costs of suit incurred; and

10.   For such other reliefs as this Court deems just and proper.

DATED: September 26, 2016                    SAUNDERS LAW GROUP, LTD.

By: _____
    GARY SAUNDERS, ESQ.
    Attorney for Plaintiffs
    MOHAMMAD A. REDJAI AND SHAHIN REDJAI

# AFFIDAVIT AND VERIFICATION
## (Civ. Proc. Code § 2015.5)

I, MOHAMMAD A. REDJAI, Plaintiff bring this lawsuit against NEW PENN
FINANCIAL LLC, dba SHELLPOINT MORTGAGE SERVICING, a Delaware Limited Liability
Company, LAW OFFICES OF LES ZIEVE, A California Corporation, THE BANK OF NEW YORK
MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS
OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-HY10 MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2006-HY10 and DOES 1 - 10, inclusive.

I have read the foregoing Complaint and know the contents thereof. I certify that the same is
true to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the
circumstances. This lawsuit is not being presented primarily for an improper purpose, such as to harass
or to cause unnecessary delay or needless increase in the cost of litigation.

The claims, defenses, and other legal contentions therein are warranted by existing law or by a
non-frivolous argument for the extension, modification, or reversal of existing law or the establishment
of new law.

The allegations and other factual contentions have evidentiary support or, if specifically so
identified, are likely to have evidentiary support after a reasonable opportunity for further investigation
or discovery. The denials of factual contentions are warranted on the evidence or, if specifically so
identified, are reasonably based on a lack of information or belief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is
true and correct.

DATED: September 26, 2016                M. A. Redjai
                                         MOHAMMAD A. REDJAI

31

PLAINTIFFS' COMPLAINT

## AFFIDAVIT AND VERIFICATION
### (Civ. Proc. Code § 2015.5)

I, SHAHIN REDJAI, Plaintiff bring this lawsuit against NEW PENN FINANCIAL LLC, dba SHELLPOINT MORTGAGE SERVICING, a Delaware Limited Liability Company, LAW OFFICES OF LES ZIEVE, A California Corporation, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-HY10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HY10; and DOES 1 - 10, inclusive.

I have read the foregoing Complaint and know the contents thereof. I certify that the same is true to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. This lawsuit is not being presented primarily for an improper purpose, such as to harass, or to cause unnecessary delay or needless increase in the cost of litigation.

The claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: September 26, 2016        _____

SHAHIN REDJAI

32

PLAINTIFFS' COMPLAINT

# Exhibit A

# Exhibit A

# InterestOnly<sup>SM</sup> ADJUSTABLE RATE NOTE

62-072295A     (11729911G)
VRU#   1-888-679-6377
MIN# 100057400002432245

(One-Year LIBOR Index (As Published in The Wall Street Journal) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE
TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS
NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE I MUST PAY.

February 22, 2006
(Date)

Irvine
(City)

California
(State)

181 Sanctuary
Irvine, CA 92620

(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 716,085.00 (this amount is called "Principal"),
plus interest, to the order of Lender. Lender is **Pulte Mortgage LLC**. I will make all payments under this Note in
the form of cash, check or money order.

I understand that Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and
who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest
at a yearly rate of 6.500%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and
after any default described in Section 7(b) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment on the first day of every month beginning on **April 1, 2006.** Before the First Principal
and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest
due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment
every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest
Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid
all of the principal and interest and any other charges described below that I may owe under this Note. Each
monthly payment will be applied as of its scheduled due date and if the payment includes both principal and
interest, it will be applied to interest before Principal. If, on March 1, 2036 I still owe amounts under this Note, I
will pay those amounts in full on that date which is called the "Maturity Date."

I will make my monthly payments at 7475 South Joliet Street  Englewood, CO 80112 or at a different place
if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $3,878.80 before the First Principal and Interest Payment
Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as
described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will
notify me prior to the date of change in monthly payment.

### (C) Monthly Payments Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate
that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly
payment in accordance with Section 4 or 5 of this Note.

Conv - Multistate InterestOnly/Adjustable Rate Note - One Year Libor Index
FE-4265 (0311)

M59A (Rev. 05/04)

62-072295A

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **March, 2011**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date of which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two And One-quarter** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **11.500** % or less than **2.250** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.500 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

Conv - Multistate InterestOnly/Adjustable Rate Note - One Year Libor Index
FE-4265 (0311)

M59B                                              Page 2 of 5

62-072295A

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charges shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payment

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one persons signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give Notice to other persons that amounts due have not been paid.

Conv - Multistate InterestOnly/Adjustable Rate Note - One Year Libor Index
FE-4265 (0311)

M59C

62-072295A

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

62-072295A

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_Mahammad A. Redjai_ _____ (Seal)
Mohammad A. Redjai          - Borrower

_____ (Seal)
Shahin A Redjai          - Borrower

_____ (Seal)
                         - Borrower

_____ (Seal)
                         - Borrower

_____ (Seal)
                         - Borrower

_____ (Seal)
                         - Borrower

_____ (Seal)
                         - Borrower

_____ (Seal)
                         - Borrower

(Sign Original Only)

Conv - Multistate InterestOnly/Adjustable Rate Note - One Year Libor Index
FE-4265 (0311)

M59E                        Page 5 of 5

Pay to the Order of:

**Countrywide Bank, N.A.**
Without Recourse
Pulte Mortgage LLC

By: Tim Ahlberg
Title: Assistant Secretary

Pulte Mortgage, LLC

Return To:

Pulte Mortgage, LLC
7475 S. Joliet St.
Englewood, CO 80112

ATTN:  SALES & ACQUISITIONS
Prepared By:
Pulte Mortgage, LLC

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

 78.00

2006000126632 04:13pm 02/24/06

124 51 D11 25
0.00 0.00 0.00 0.00 72.00 0.00 0.00 0.00

626 7229

610   117299119   D2   001   001

——————[Space Above This Line For Recording Data]——————

# DEED OF TRUST

MIN 100057400002432245
VRU# 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated February 22, 2006
together with all Riders to this document.
(B) "Borrower" is Mohammad A Redjai  and Shahin A Redjai

Borrower's address is 181  Sanctuary, Irvine, CA  92620
. Borrower is the trustor under this Security Instrument.
(C) "Lender" is Pulte Mortgage LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01

(VMP) -6A(CA) (0207)
Page 1 of 15                    Initials: _____          MCA41AFORM62-07229     (Rev. 12/01)
    VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 7475 South Joliet Street  Englewood, CO 80112

(D) "Trustee" is TJ Blinstrubas

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated February 22, 2006
The Note states that Borrower owes Lender Seven Hundred Sixteen Thousand Eighty-five
And 00/100                                                                                    Dollars
(U.S. $716,085.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than March 1, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [x] Adjustable Rate Rider | [x] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

MCA41BFORM62-07229

-5A(CA) (0207)                    Page 2 of 15                 Initials: _____          Form 3005  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County                    of                    Orange                    :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
See Attached Legal Description

Parcel ID Number:                                          which currently has the address of
181 Sanctuary                                                                              [Street]
Irvine                                         [City], California 92620         [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

MCA41EFORM62-07229      Page 6 of 16      Initials: ___      Form 3005   1/01

-6A(CA) (0207)

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

MCA41IFORM62-0722    -6A(CA) (0207)    Page 9 of 15    Initials:    Form 3005 1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____  (Seal)
Mohammad A. Redjai              -Borrower

_____  (Seal)
Shahin A Redjai                 -Borrower

_____  (Seal)
                                -Borrower

_____  (Seal)
                                -Borrower

_____  (Seal)
                                -Borrower

_____  (Seal)
                                -Borrower

_____  (Seal)
                                -Borrower

_____  (Seal)
                                -Borrower

State of California
County of ~~Riverside~~   *R, A. H*

On   *O R A N G E*   before me,   } ss.

personally appeared

Mohammad A. Redjai and Shahin A Redjai

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*See Acknowledgement*   (Seal)

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _ORANGE_ }ss.

On _February 23,_ 2006 _,_ before me, _Reid A. Hausch, Notary Public_
<br>Date         Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Mohammad A RedJai SDamin A RedJai_
<br>Name(s) of Signer(s)

> □ personally known to me
> ☑ proved to me on the basis of satisfactory evidence
>
> to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
>
> WITNESS my hand and official seal.

REID A. HAUSCH
<br>Comm.# 1604333
<br>NOTARY PUBLIC-CALIFORNIA
<br>Orange County
<br>My Comm. Expires August 28, 2008

Place Notary Seal Above      Signature of Notary Public

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Deed of Trust_

Document Date: _Feb. 22, 2006_  Number of Pages: _Fifteen_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _____
- □ Individual
- □ Corporate Officer — Title(s): _____
- □ Partner — □ Limited □ General
- □ Attorney in Fact
- □ Trustee
- □ Guardian or Conservator
- □ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
<br>Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org  Prod. No. 5907  Reorder: Call Toll-Free 1-800-876-6827

# CONDOMINIUM RIDER

VRU# 1-888-679-6377     MIN# 100057400002432245

THIS CONDOMINIUM RIDER is made this 22nd         day of **February, 2006**         ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to **Pulte Mortgage LLC**

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

### 181 Sanctuary, Irvine, CA  92620
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:

### Cachette
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

CONDO1FORM62-072295      (Rev. 04/05)

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
VMP-8R (0411)       Form 3140 1/01
Page 1 of 3          Initials: _____
VMP Mortgage Solutions, Inc.
(800)521-7291

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

CONDO2FORM62-072295

VMP-8R (0411)            Page 2 of 3            Initials: _____            Form 3140 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_Mohammad A. Redjai_ (Seal)
Mohammad A. Redjai                        -Borrower

_____ (Seal)
Shahin A Redjai                           -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

CONDO3FORM62-072295
VMP-8R (0411)                Page 3 of 3                Form 3140 1/01

After Recording Return To: Pulte Mortgage LLC
7475 South Joliet Street
Englewood, CO 80112
Attn: Sales & Acquisitions

Prepared By: Pulte Mortgage LLC

DOC/Parcel ID#:

———————————————— (Space Above This Line For Recording Data) ————————————————

# FIXED/ADJUSTABLE RATE RIDER

### (LIBOR One-Year Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this **22nd** day of **February** , **2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the"Note") to   Pulte Mortgage LLC

("Lender") of the same date and covering the property described in the Security Instrument and located at:

181 Sanctuary
Irvine, CA  92620

[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

Conv
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family INTEREST ONLY
FE-4266 (0204)                                                                 Page 1 of 4
P-59ARA (01/04)                                                                                          Initials: _____

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of    6.500    %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)  Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **March, 2011**        , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called a "Change Date."

### (B)  The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding    **Two And One-quarter**       percentage points (   2.250    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than  11.500 % or less than 2.250     %). Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    11.500    %.

### (E)  Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date of notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

Conv

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family INTEREST ONLY
FE-4266 (0204)

P-59ARC                                          Page 3 of 4                              Initials: _____

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.**

_Mohammad A. Redjai_ (Seal)
Mohammad A. Redjai - Borrower

_Shahin A Redjai_ (Seal)
Shahin A Redjai - Borrower

_____ (Seal)
- Borrower

_____ (Seal)
- Borrower

_____ (Seal)
- Borrower

_____ (Seal)
- Borrower

_____ (Seal)
- Borrower

_____ (Seal)
- Borrower

Conv
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family INTEREST ONLY
FE-4266 (0204)                    Page 4 of 4
P-59ARD  (01/04)

# LEGAL DESCRIPTION

Exhibit "A"

PARCEL NO. 1:

UNIT 52 (THE "UNIT") AS SHOWN AND DESCRIBED IN THE CACHETTE PHASE 14 CONDOMINIUM PLAN (TOGETHER WITH ANY AMENDMENTS THERETO, COLLECTIVELY, THE "PLAN") FOR LOTS 13 AND 15 OF TRACT NO. 16534, WHICH PLAN WAS RECORDED ON NOVEMBER 28, 2005, AS INSTRUMENT NO. 2005000946878 IN OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA ("OFFICIAL RECORDS,") TRACT NO. 16534 AS SHOWN ON THE SUBDIVISION MAP ("MAP") FILED ON JUNE 29, 2004, IN BOOK 859, AT PAGES 8 TO 12, INCLUSIVE, OF MISCELLANEOUS MAPS IN THE OFFICE OF THE ORANGE COUNTY RECORDER.

EXCEPTING THEREFROM:

A. ANY AND ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, GEOTHERMAL STEAM, AND ANY OTHER MATERIAL RESOURCES AND ALL PRODUCTS DERIVED FROM ANY OF THE FOREGOING, THAT MAY BE WITHIN OR UNDER THE UNIT, TOGETHER WITH THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND STORING IN AND REMOVING THE SAME FROM THE UNIT OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE UNIT, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE UNIT, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER AND BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, STORE, EXPLORE OR OPERATE THROUGH THE SURFACE OR THE UPPER FIVE HUNDRED (500) FEET OF THE SUBSURFACE OF THE UNIT.

B. ANY AND ALL WATER, WATER RIGHTS OR INTERESTS THEREIN APPURTENANT OR RELATING TO THE UNIT OR OWNED OR USED BY IRVINE IN CONNECTION WITH OR WITH RESPECT TO THE UNIT (NO MATTER HOW ACQUIRED BY IRVINE,) WHETHER SUCH WATER, WATER RIGHTS OR INTEREST THEREIN SHALL BE RIPARIAN, OVERLYING, APPROPRIATIVE, LITTORAL, PERCOLATING ,PRESCRIPTIVE, ADJUDICATED, STATUTORY OR CONTRACTUAL, TOGETHER WITH THE RIGHT AND POWER TO EXPLORE, DRILL, REDRILL, REMOVE AND STORE THE SAME FROM OR IN THE UNIT OR TO DIVERT OR OTHERWISE UTILIZE SUCH WATER, WATER RIGHTS OR INTEREST THEREIN ON ANY UNIT OWNED OR LEASED BY IRVINE; BUT WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF THE UNIT IN THE EXERCISE OF SUCH RIGHTS.

PARCEL NO. 2:

AN UNDIVIDED ONE-NINTH (1/9) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO THE COMMON AREA DESCRIBED IN THE PLAN.

## LEGAL DESCRIPTION
(continued)

PARCEL NO. 3:

EXCLUSIVE EASEMENTS FOR THE BENEFIT OF THE UNIT APPURTENANT TO PARCEL NOS. 1 AND 2 DESCRIBED ABOVE, FOR INTERNAL AND EXTERNAL TELEPHONE WIRING PURPOSES, AS APPLICABLE, OVER THOSE PORTIONS OF THE ASSOCIATION PROPERTY OR ADJACENT UNIT SHOWN ON THE PLAN OR AS DESCRIBED IN THE DECLARATION OR THE NOTICE OF ADDITION.

PARCEL NO. 4:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, DRAINAGE, SUPPORT, ENCROACHMENT, MAINTENANCE, REPAIR, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN ON THE PLAN AND THE MAP, AND AS DESCRIBED IN THE MASTER DECLARATION, THE NOTICE OF ANNEXATION, THE DECLARATION AND THE NOTICE OF ADDITION.

END OF LEGAL DESCRIPTION

# Exhibit B

# Exhibit B

Recording Requested By:
**Bank of America**
Prepared By:  Cecilia Rodriguez
450 E. Boundary St.
Chapin, SC 29036
**888-603-9011**
When recorded mail to:
CoreLogic
450 E. Boundary St.
**Attn: Release Dept.**
Chapin, SC 29036



DocID#    96711729911914859

Property Address:
**181 Sanctuary**
**Irvine, CA 92620-3826**
CA0-ADT 14281064          8/5/2011

This space for Recorder's use

MIN #:  100057400002432245          MERS Phone #:  888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-HY10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HY10** whose address is **101 BARCLAY ST - 4W, NEW YORK ,NY 10286** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:            **PULTE MORTGAGE LLC**
Original Borrower(s):       **MOHAMMAD A REDJAI AND SHAHIN A REDJAI**
Original Trustee:           **TJ BLINSTRUBAS**
Date of Deed of Trust:      **2/22/2006**
Original Loan Amount:       **$716,085.00**

Recorded in **Orange County, CA** on: **2/24/2006**, book N/A, page N/A and instrument number **2006000126632**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
_08/11/2011_

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
Dominique Johnson, Assistant Secretary

State of California
County of Ventura

On _8/11/11_ before me, _Violet Thomas-Hicks_, Notary Public, personally appeared
Dominique Johnson, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _Violet Thomas-Hicks_           (Seal)
My Commission Expires: _Oct 28, 2012_

VIOLET THOMAS-HICKS
Commission # 1820527
Notary Public - California
Los Angeles County
My Comm. Expires Oct 28, 2012

Borrower(s) MOHAMMAD A. REDJAI
SHAHIN A. REDJAI

# Exhibit C

# Exhibit C



**RECEIVED SEP 2 6 2016**

## Shellpoint
### Mortgage Servicing

55 Beattie Place, Suite 110
Greenville, SC 29601

Toll Free Phone 1-866-316-4706
Toll Free Fax 1-866-467-1137

*Hours of Operation*
Monday-Friday 8:00AM-10:00PM
Saturday 8:00AM-3:00PM

September 22, 2016

Saunders Law Group, LTD
Attn: Gary Saunders, Esq.
1891 California Ave., Suite 102
Corona, CA 92881

RE:    Clients/Borrowers:  Mohammad A Redjai & Shahin Redjai
       Property Address:  181 Sanctuary, Irvine, CA 92620
       Reference Number:  0539114600

Dear Gary Saunders:

This letter is in response to your correspondence dated September 12, 2016, regarding the above
referenced loan. Shellpoint Mortgage Servicing ("Shellpoint") began servicing the above
referenced loan on or about March 1, 2014.

Per your correspondence, you requested copies of the Note, Deed of Trust, Assignment, and
Payment History.

As requested, enclosed are copies of the Note, Deed of Trust, Assignment, and Payment History.

If you have any additional questions or concerns, please contact our Customer Service department
at 866-316-4706.

Sincerely,

C. Warner
Shellpoint Mortgage Servicing

---

This communication is sent to you by Shellpoint Mortgage Servicing, a professional debt collector.

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose.
This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of
this debt: please be advised that this notice is to advise you of the status of your mortgage loan.

AS90222016T

# Exhibit D

# Exhibit D

# Shellpoint
## Mortgage Servicing

DO NOT SEND MAIL OR PAYMENTS TO THIS ADDRESS
P.O. Box 619063 • Dallas, TX 75261-9063

**MORTGAGE STATEMENT** Statement Date: 08/17/2016

| Account Number | 0539114600 |
|---|---|
| Next Due Date | 09/01/2016 |

**Amount Due** $458,732.29
*If payment is received after 09/16/2016, $0.00 late fee may be assessed.*

| Phone: | 866-316-4706 |
|---|---|
| Website: | www.shellpointmtg.com |

4-811-00943-0001762-001-1-000-010-000-000



MOHAMMAD A REDJAI
181 SANCTUARY
IRVINE CA 92620-3826

### Explanation of Amount Due

| | |
|---|---|
| Principal | $1,839.47 |
| Interest | $1,719.56 |
| Escrow (Taxes and Insurance) | $7,379.78 |
| **Regular Monthly Payment** | $10,938.81 |
| Total Fees and Charges | $0.00 |
| Overdue Payment | $447,793.48 |
| **Total Amount Due** | **$458,732.29** |

### Account Information

| | |
|---|---|
| Outstanding Principal | $716,085.00 |
| Interest Rate (until 03/01/2017) | 3.3750% |
| Prepayment Penalty | None |
| Property Address: | 181 SANCTUARY |
| | IRVINE CA 92620 |
| Contractual Due Date: | November 1, 2010 |
| Current Escrow Balance: | -$70,804.44 |

### Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

### Transaction Activity (07/17/2016 - 08/16/2016)

| Date | Description | | Charges | Payments |
|---|---|---|---|---|
| | *No transaction activity during this period.* | | | |

### Important Messages

***Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.*

### Additional Messages

Repayment options may be available to you. **Call 866-316-4706** to discuss payment arrangements. Failure to act on this matter may result in us exercising our legal rights as permitted by the contract and applicable state laws.

### **Delinquency Notice**

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure -- the loss of your home. As of 08/17/2016, you are 2,116 days delinquent on your mortgage loan.

Recent Account History
o Payment due 03/01/16:  unpaid balance of $397,357.75
o Payment due 04/01/16:  unpaid balance of $9,874.23
o Payment due 05/01/16:  unpaid balance of $9,874.23
o Payment due 06/01/16:  unpaid balance of $9,874.23
o Payment due 07/01/16:  unpaid balance of $9,874.23
o Payment due 08/01/16:  unpaid balance of $10,938.81
o Payment due 09/01/16:  current payment due
o Total: $458,732.29 due.  **You must pay this amount to bring your loan current.**

If You Are Experiencing Difficulty: Please refer to the back of this stateme for additional messages about mortgage counseling and assistance.

For information about your payments, total amount due, and additional payment history, see reverse side.

# Exhibit E

# Exhibit E

# AFFIDAVIT OF MAILING
# FOR SUBSTITUTION OF TRUSTEE BY CODE

TS No.: **15-38334**

Trustor: **MOHAMMAD A. REDJAI AND SHAHIN A. REDJAI**

**I, Christine O'Brien, Trustee Sale Officer**, declare: That I am an officer, agent or employee of LAW OFFICES OF LES ZIEVE whose business address is:

30 Corporate Park, Suite 450
Irvine, CA 92606
Contact Phone Number: (714) 848-7920

A copy of the attached Substitution has been mailed prior to the recording thereof, in the manner provided in Section 2924(b) of the Civil Code of the State of California to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 08/30/2016

Christine O'Brien, Trustee Sale Officer

RECORDING REQUESTED BY:

Old Republic Title

AND WHEN RECORDED MAIL TO:
LAW OFFICES OF LES ZIEVE
30 Corporate Park, Suite 450
Irvine, CA 92606

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 932-655-22  TS No.: 15-38334   TSG Order No.: 02-15037246   Loan No: 0539114600

## SUBSTITUTION OF TRUSTEE

**WHEREAS, MOHAMMAD A. REDJAI AND SHAHIN A. REDJAI** was the original Trustor, **TJ BLINSTRUBAS** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PULTE MORTGAGE LLC., A LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS** was the original Beneficiary under that certain Deed of Trust dated **2/22/2006** and recorded on **2/24/2006** as Instrument No. **2006000126632** , in Book --, **Page —** of Official Records of Orange County, California, and

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE,** the undersigned hereby substitutes **LAW OFFICES OF LES ZIEVE, 30 Corporate Park, Suite 450, Irvine, CA 92606,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

TS No.: 15-38334
Loan Number: 0539114600

**Substitution of Trustee**

Dated: _July 28, 2016_

New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing as
servicer for THE BANK OF NEW YORK MELLON FKA THE
BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF THE CWALT, INC.,
ALTERNATIVE LOAN TRUST 2006-HY10 MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2006-HY10

By: _____
Name: Suzette Fontenette
Title: Foreclosure Specialist

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document

STATE of _Texas_

COUNTY of _Harris_

Before me, _Alvin Denmon_, the undersigned officer, on this, the _28_ day

of _July_, 20_16_ personally appeared _Suzette Fontenette_
(insert name of signer)

known to me or, through production of _____ as identification, who

identified her/himself to be the _Foreclosure Specialist_ of New Penn Financial LLC DBA

Shellpoint Mortgage Servicing, the person and officer whose name is subscribed to the foregoing

instrument, and being authorized to do so, acknowledged that (s)he had executed the foregoing instrument

as the act of such corporation for the purpose and consideration described and in the capacity stated.

(seal)

ALVIN DENMON
Notary Public, State of Texas
My Commission Expires
January 05, 2019

_Alvin Denmon_
(Type or print name below signature)
Notary Public, State of _Texas_
My Commission Expires: _1.5.19_

# Exhibit F

# Exhibit F

[RECORDING REQUESTED BY]
LAW OFFICES OF LES ZIEVE

[WHEN RECORDED MAIL TO:]
Law Offices Of Les Zieve
30 Corporate Park, Suite 450
Irvine, CA 92606

---

T.S. No. 15-38334                          APN: 932-655-22

(SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY)

# NOTICE OF TRUSTEE'S SALE

PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다.
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 2/22/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **MOHAMMAD A. REDJAI AND SHAHIN A. REDJAI**
Duly Appointed Trustee: LAW OFFICES OF LES ZIEVE Deed of Trust recorded 2/24/2006 as Instrument No. 2006000126632 in book --, page -- of Official Records in the office of the Recorder of Orange County, California,
Date of Sale:**9/30/2016** at 3:00 PM
Place of Sale:      On the front steps to the entrance of the Orange Civic Center, 300 E. Chapman, Orange, CA
Estimated amount of unpaid balance and other charges: **$956,348.06**

ery

Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt owed.

Street Address or other common designation of real property:
Described as follows:
**181 SANCTUARY
IRVINE, CA 92620**
AS MORE FULLY DESCRIBED ON SAID DEED OF TRUST

A.P.N #.: **932-655-22**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 848-9272 or visit this Internet Web site www.elitepostandpub.com, using the file number assigned to this case 15-38334. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Dated: 8/30/2016

**LAW OFFICES OF LES ZIEVE, as Trustee
30 Corporate Park, Suite 450
Irvine, CA 92606
For Non-Automated Sale Information, call: (714) 848-7920
For Sale Information: (714) 848-9272   www.elitepostandpub.com**

Christine O'Brien, Trustee Sale Officer

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION WE OBTAINED WILL BE USED FOR THAT PURPOSE

